Marlon JOHNSON, Plaintiff-Respondent,

v.

H. Sam PRIEST, Russell L. Dearmont, Kenneth Teasdale, Alphonse G. Eberle, Members of the St. Louis Metropolitan Board of Police Commissioners, and Raymond R. Tucker, Ex Officio Member, Defendants-Appellants.

No. 31668.

St. Louis Court of Appeals.

Missouri.

Dec. 21, 1965.

Thomas F. McGuire, City Counselor, St. Louis, Eugene P. Freeman, Associate City Counselor, for defendants-appellants.

James J. Rankin, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

This is an appeal from a judgment of the circuit court reversing an administrative determination by the Board of Police Commissioners of the City of St. Louis dismissing the respondent from the Police Department for cause. We will refer to the respondent by that designation and to the Board of Police Commissioners as "the board."

The circuit court's judgment was responsive to plaintiff's petition for review. The record brought to the circuit court from the board consists of the following: the charges and specifications made by the department against the plaintiff; the transcript of the testimony of witnesses appearing at the board's hearing; documentary evidence in the form of the plaintiff's "daily activity sheet," the "Police Manual," and the Police Department's report file relating to the plaintiff's record while with the department; and the board's decision which consisted of written findings of fact and conclusions of law and the order entered based thereon. The "Police Manual" provides for the government and discipline of officers of the department. Certain of the rules contained in the Police Manual govern the conduct in the performance of duty by officers of the department. Other rules regulate the procedures to be followed in hearings before the board involving a contested disciplinary proceeding relating to violation of department rules. These require that a formal pleading containing the charge or charges of one or more violations of a rule and a specification of facts which allegedly supporting each charge must be filed to commence a contested disciplinary proceeding. In the instant case all of the charges and the facts related in the specifications filed in support thereof arose from the same occurrence.

The specific charges made against the plaintiff were as follows: Charge I was an alleged violation of Rule 15, Section 2, relating to "conduct unbecoming an officer"; Charge II was a violation of Rule 7,

Section 2, Subsection K, which provides that an officer "[s]hall not take part or be concerned, either directly or indirectly, in making or negotiating any compromise or arrangement with any person whatsoever, the purpose or object of which may be to permit one accused of wrongdoing to escape the penalty of the law * * *"; and Charge III alleged a violation of Rule 27, Section 6, which provides that "[n]o member of the Department shall accept, directly or indirectly, from any person liable to arrest or complaint or in custody, or after discharge * * * any reward or gift whatsoever." Each of these charges was supported by a detailed specification.

The findings of fact as made by the board were: that on the occasion out of which the charges arise the plaintiff was a member of the Police Department and assigned to duty in the Ninth District; that on the date of the occurrence out of which the charges arise he was on duty in a one-man patrol motor vehicle being the only unmarked black patrol vehicle present in the Ninth District at that time; that at approximately 3:00 a. m. on the date of this occurrence the plaintiff, while alone, stopped, detained and accused Jessie Jackson of operating a motor vehicle without a lawfully required driver's license and of failing to obey the signal of an electric traffic control device located at the intersection of Cass and Grand Avenues in the city; that during the course of talking to and questioning Jackson and Charles Archie, a companion of Jackson, the plaintiff was found to have learned that Archie was in charge and control of the motor vehicle and had permitted Jackson to operate it; that the plaintiff threatened to take Jackson into custody and to conduct him to the Ninth District station house but did not do so after requesting and accepting a bribe from the said Archie and Jackson in the form of $17.00; that upon receipt of this amount he permitted these two persons to remain at liberty without any charges being placed against them. The last two paragraphs of the board's written findings

of fact should be set out in full and are as follows: "6. That the said patrolman, through his testimony before this Board, denying the occurrence of the above facts, falsely testified and is not believed by this Board; 7. That the two witnesses, Archie and Jackson, have not been shown to have any motive for charging Patrolman Johnson with commission of the foregoing facts, other than normal outrage at being blackmailed by an officer of the law; and their credibility upon testifying is considered reliable and truthful."

It further appears after the occurrence described in the findings of fact two other police officers noticed Archie and Jackson "hanging around" a phone booth located on the premises of a filling station at Cass and Spring Avenues. The officers deemed this suspicious and interrogated these men. Archie then told the officer of the bribe and stated he was attempting to call police headquarters. These officers took Archie and Jackson to the Ninth District Station where their story was repeated.

■ In the instant case the briefs and the transcript disclose that there is no dispute with regard to the presence of evidence sufficient to support the findings of fact made by the board. The respondent did not contend before the circuit court, nor does he contend now, that the testimony of Jackson and Archie, if believed, is insufficient to support the findings made. As is apparent from the petition for review filed with the circuit court and from his brief before this court the plaintiff bases his entire case upon the allegation that Archie and Jackson were unworthy of belief. That is the issue presented for our decision. The plaintiff's position is summed up by this following allegation from the petition for review: "* * * This testimony would leave no reasonable assumption other than that these men were lying and it was unreasonable and arbitrary and capricious on the part of the Board to 'rubber stamp' so to speak the testimony of these men wholly in disregard of the testimony of Officer

Marion Johnson who had served fifteen years as a police officer without a blemish on his record." In this connection it must be borne in mind that the circuit court was not authorized to reverse the board's decision merely because the testimony of Archie and Jackson was weakened by contradictions. Since he does not contend their testimony, if believed, was insufficient to support the board's decision, to prevail the plaintiff must show that Jackson and Archie were completely and utterly unworthy of belief. This is so due to the limitations of the review that can be given in such matters by the circuit court and upon appeal to this court. See § 536.140, RSMo 1959, V.A.M.S. It is too well settled to require citation that neither the trial court nor this court may substitute its judgment on the evidence for that of the board. The inquiry by the circuit court and that of this court is limited to ascertaining whether the board could have reasonably made its findings and reached its result upon consideration of all the evidence before it and whether the board's decision was clearly contrary to the overwhelming weight of the evidence.

The plaintiff attempts to bear this burden by setting out certain testimony given by Archie and by Jackson which he characterizes as "totally contradictory." Reference to the transcript does indicate that there was some contradiction and confusion between Archie and Jackson as to several matters. For example, Jackson consistently maintained that Archie picked him up at his home whereas, Archie, after first agreeing with this version, testified the meeting place was at a tavern. However, Archie explained that apparent contradiction later in his testimony by stating that he confused a statement made by Jackson as to where he would be. Another example relates to the testimony of these witnesses with respect to where the parties were when the money was passed to the officer, on the sidewalk or in the police car. Other alleged contradictions involved whether Archie and Jackson violated the electric

traffic signal at Grand and Cass Avenues and where the parties were positioned when the initial contact with the officer took place. A careful search of the transcript discloses that there is little, if any, variation in the testimony of Archie and Jackson on these matters and it is unnecessary to burden this opinion with a minute and detailed examination of the evidence with reference to them. What little variation does exist was not of such consequence as to authorize the board to completely disregard the clear and unequivocal testimony of these witnesses on the essential issue; i. e., did the plaintiff accept a bribe of $17.00 in return for allowing Archie and Jackson to escape being charged with the violations the officer who accosted them had observed or had discovered during his interrogation of them.

There are at least two other matters to which Archie and Jackson testified without contradiction and which certainly bear upon the issue of whether their testimony is worthy of belief. The first of these was the fact that both witnesses gave a detailed description of the unmarked black police vehicle the officer who solicited and accepted their money was operating. There was only one such vehicle in the entire Ninth Police District and it was being operated by the plaintiff. Such a vehicle is totally different from the standard police equipment, and it was admitted this vehicle was being operated in the general area by the plaintiff during the time when this occurrence allegedly took place. These witnesses described this vehicle prior to the time they knew the name of the officer who stopped them.

The second fact is that Archie gave a detailed physical description of the officer who stopped them prior to his later identification of plaintiff from a line up of police officers. There was never any claim that this description did not correspond to the plaintiff's physical characteristics. Plaintiff seeks to dilute the effect of this testimony by relying on Archie's admission he had seen the plaintiff prior to the date of this occurrence. He couples this with the fact that when Archie and Jackson first told their story of the bribe they were being interrogated by another officer whose interest had been aroused by actions by Archie and Jackson which he termed "suspicious." Plaintiff's argument is based upon the assumption that Jackson and Archie made up this story to explain away their suspicious behavior near a filling station and in doing so Archie described an officer he had previously seen. That inference might be drawn from this combination of facts but equally available was the inference that they had indeed been attempting to contact police headquarters by use of the telephone. The finders of the fact did not draw the inference the plaintiff now urges upon us. Perhaps this was because there was nothing in the record to raise any inference that Archie and Jackson had any activity in mind other than that stated. In any event we cannot substitute our judgment on the facts for that of the board.

■ We are not to be understood as ruling this case upon any decision of our own as to the credibility of Jackson and Archie or as to whose story should be believed. We mention the evidence which supports the view that these men were worthy of belief merely to show that their stories were not so completely and patently false as to entitle the trial court or this court to totally disregard them and to illustrate that a decision based upon their testimony could not be held to be contrary to the overwhelming weight of the evidence. That being so, the issue presented to the board simply was who to believe, Jackson and Archie or the plaintiff. As stated in findings 6 and 7 as set out earlier in this opinion, they chose to believe Jackson and Archie and to disbelieve the plaintiff. It has repeatedly been stated that, in reviewing matters of this nature, the circuit court, and this court, should adhere to the rule of deference as to findings involving the credibility of witnesses appearing before the administrative board. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d

647; State ex rel. Bond v. Simmons, Mo. App., 299 S.W.2d 540.

In view of the narrow issue upon which this case must have turned when presented to the board; i. e., who to believe, the rule of deference is decisive of this appeal provided that the board's decision was not clearly contrary to the overwhelming weight of the evidence. As has been indicated, we do not so find it. The rule of deference compels us to reverse the circuit court's judgment and to remand this cause to that court with directions that it enter its judgment affirming the decision of the Police Board of the City of St. Louis.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the circuit court with directions to enter its judgment affirming the decision of the Police Board of the City of St. Louis.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.