**Ola P. McCALLISTER, (Plaintiff) Appellant,**

**v.**

**H. Sam PRIEST, Kenneth Teasdale, Alphonse G. Eberle, Russell Dearmont and Raymond R. Tucker, as Members of the Board of Police Commissioners of the City of St. Louis, Missouri, (Defendants) Respondents.**

**No. 52686.**

Supreme Court of Missouri,
En Banc.

Jan. 8, 1968.

Orville Richardson, St. Louis, and Corinne R. Goodman, University City, for plaintiff-appellant.

Thomas F. McGuire, City Counselor, Eugene P. Freeman, Associate City Counselor, St. Louis, for defendants-respondents.

FINCH, Presiding Judge.

This is a proceeding brought under the Administrative Procedure and Review Act, Chapter 536 (all statutory references are to RSMo 1959, V.A.M.S., unless otherwise indicated) to review an order of the Board of Police Commissioners of the City of St. Louis (herein usually referred to as Board). This proceeding is a contested case before an agency within the terms of Chapter 536 and is reviewable under said act. Scism v. Long, Mo.App., 280 S.W.2d 481.

Appellant, a Major in the St. Louis Metropolitan Police Department, was suspended as North Area Commander by his commanding officer on February 6, 1964.[1] A written charge of general inefficiency as North Area Commander in violation of Rule 15, Section 2 of the St. Louis Police Manual, amplified by seven more detailed specifications, was filed by the Chief of Police before the Board. Appellant pleaded not guilty thereto. After a hearing, the Board found appellant guilty of

1. The South Area Commander and two Lieutenants and six Sergeants were suspended at the same time.

general inefficiency and dismissed him from the Police Force, effective December 14, 1964. Pursuant to Chapter 536, he filed a petition for review in the Circuit Court of the City of St. Louis. The Circuit Court on December 9, 1966, affirmed and appellant has appealed to this court. We have jurisdiction because appellant asserts various constitutional questions, including a claim that both Rule 15, Section 2 of the Police Manual and § 84.170(2), which authorizes such rules, are unconstitutional under the due process clauses of the Federal and State Constitutions. Rose v. State Board of Registration for Healing Arts, Mo., 397 S.W.2d 570.

One of the specifications detailing the charge against appellant was dismissed before the hearing. The other six specifications are lengthy and somewhat repetitious but may be summarized as follows: Despite instructions received, appellant failed to take effective measures to bring about more effective patrol and police activity in his area. He failed to establish and maintain an adequate and effective line inspection system, in spite of orders so to do, with the result that line inspections in his area were ineffective to detect improper performance of duty by personnel under his supervision. He made no effective suggestions or recommendations of changes which would improve performance, he expressed satisfaction with the performance of all personnel, and he failed to recommend changes in personnel who were inefficient. Thereby he demonstrated his unwillingness or inability to carry out the duties of his rank and command.

The hearing in this case was lengthy. Testimony was taken on 23 days and arguments heard on another day. The transcript consists of approximately 2200 typewritten pages and there are approximately 150 exhibits. The Police Board made 36 findings of fact. It would serve no useful purpose for us in this opinion to undertake to recite all of the evidence, and we do not propose to do so. We state testimony received only insofar as necessary to this decision.

The Bureau of Field Operations consists of approximately eighty per cent of the uniformed force of the Police Department. It actively patrols the entire city. It is commanded by a Lieutenant Colonel. The city is divided into the North and South geographic areas, each commanded by a Major. Appellant was the commanding officer of the North Area and·was directly accountable to the Chief of the Bureau of Field Operations. Under each Major were various Captains, Lieutenants, Sergeants and Patrolmen in a military type organization.

In November, 1962, the Chief of Police, pursuant to a decision by the Police Board, ordered a reorganization in which a Division of Field Inspections was established in the Bureau of Inspections. It was charged with making objective functional inspections of the work of the Bureau of Field Operations and making reports thereon directly to the Chief of Police. In the past, inspectors of the Bureau of Inspections had undertaken to correct deficiencies in work of members of the Bureau of Field Operations which they observed in making their inspections. Under the new system, such inspectors were instructed that they were to act as purely staff inspectors and were to take no corrective action. At the same time, the Chief of Police ordered the Bureau of Field Operations to institute a line inspection system to discover, correct and report on operational deficiencies in the Bureau. Appellant was ordered to do this in his North Area Command. Field Operations Area Commanders received periodic summaries which disclosed the results of inspections by staff inspectors, but these disclosed only the inspections made and deficiencies observed without giving names and places. Occasionally, to substantiate the validity of the method used by staff inspectors, Majors were given the names of particular officers involved but were instructed specifically that such in-

formation was not to be used for disciplinary purposes. Appellant was told that it was his responsibility as Field Operations Commander of the North Area to seek out deficiencies by their line inspection system (Captains of Lieutenants, Lieutenants of Sergeants, Sergeants of Patrolmen) and to see that necessary instruction and discipline were provided and proper reporting made.

Witnesses in support of the charges against appellant testified that he was skeptical of this new system. He felt that staff inspectors should correct deficiencies observed, or that the details of the inspections, including names of persons involved, should be furnished to the Area Commander.

In order to acquaint Bureau of Operations personnel with the new staff inspection system and to assist them in establishment and operation of a line inspection system, a "Coordinated Field Inspection Training Program" was instituted early in 1963 and continued until August of that year. Approximately one-half of the officers of the Bureau of Operations rode with inspectors during this period. Appellant rode in the training program for approximately one week. Reports of the Bureau of Field Operations officers riding on detached service were available to appellant. The deficiencies observed by such Field Operations personnel while riding on detached service approximated those reported by staff inspectors.

Chief Brostron and Lieutenant Colonel Shea (Chief of Field Operations and appellant's immediate superior) testified that appellant did not establish an effective line inspection system. Inspections and deficiencies reported by the North Area Command were substantially fewer than those reported for the area by staff inspectors to the Chief of Police. When Shea discussed these matters with appellant, he reported that he and his officers were not finding all of the deficiencies reported by staff inspectors and that his personnel were

all efficient and doing a good job. Shea and Brostron testified to frequent conferences with and orders to appellant on this subject, but without noticeable change or improvement in 1963 or prior to his suspension on February 6, 1964. In late August, Shea suggested that appellant voluntarily step down to Captain, and shortly thereafter Chief Brostron suggested to appellant that the job might be too big for him.

Examples of deficiencies reported included such things as changing location without notifying the dispatcher, officer not at location reported, not performing duty stated, substandard handling of assignments, etc. The witnesses testified that such instances caused the Department not to have control over and full use of the Police Force, and hence not to have the benefit of full utilization of the personnel in combating increasing crime. For example, a practice repeatedly found to be occurring by inspectors was the calling out of service for a "buildings check," i.e., security investigation, but rather than trying doors, etc., the patrolman would remain in the car and flash his cruiser spotlight on the buildings as he drove by. Use of the light in this manner is not in itself wrong or against proper procedure while in cruising patrol. It is wrong when the duty announced as being performed is "buildings checks." The result of this practice is loss of control of the patrolman, overloading patrolmen in adjacent patrol areas, and lessening of effective service coverage of the combined patrol areas.

The Board found, as a basis for its order of dismissal, that appellant failed to bring about and maintain an effective line inspection system, that operational deficiencies in his command continued without improvement, and that appellant, as a result, displayed an inability to effectively command the North Area.

The Police Department for the City of St. Louis is established by the provisions of Chapter 84. The Board consists of the Mayor and four persons appointed by the

Governor of Missouri. § 84.020. Members of the Police Force are appointed by the Board. § 84.100. Qualifications of members of the Police Force are provided by § 84.120. That section then provides as follows: "The patrolmen and turnkeys hereafter appointed shall serve while they shall faithfully perform their duties and possess mental and physical ability and be subject to removal only for cause after hearing by the boards, who are hereby invested with the exclusive jurisdiction in the premises."

The table of organization for the St. Louis Police Force, specifying various authorized ranks and the number of each, is set out in § 84.150. The time which a member of the department must spend in grade before promotion to a particular rank is provided in § 84.170. After providing the various ranks of which the officers of the police force shall consist, § 84.150 then concludes as follows: "They shall have commissions issued to them by the board of police commissioners, and those heretofore and those hereafter commissioned shall serve so long as they shall faithfully perform their duties and possess the necessary mental and physical ability, and be subject to removal only for cause after a hearing by the board, who are hereby invested with the exclusive jurisdiction in the premises."

Appellant's brief states, "Dismissal of Major McCallister from the Force was beyond the pleadings since he was charged only with inability to hold his job as North Area Commander." This contention necessitates a consideration of the nature and extent of the charge and specifications.

Appellant was charged with general inefficiency in the performance of his duties as Major in charge of the North Area Command in the particulars set out in the various specifications. The charge and specifications relate solely to his performance in that capacity. They do not relate to his status as a member of the Police Force in some other capacity or allege de-ficiencies other than in his command position. This is made clear by a statement into the record by counsel for the Board at the hearing on the charges against appellant. Counsel stated: "Initially, I think it well to point out what this case does not involve. These charges do not amount to any specification of intentional wrongdoing or corruption in office relating to Major McCallister. This officer stands here today admitted by all to have had a long and honorable record of service to the Department and the people of the City of St. Louis." Counsel for the Board further stated: "* * * It became clearly apparent that Major McCallister had insufficient grasp of the necessities required in his command. He had to be replaced." In addition, the record discloses that Chief of Police Brostron, in announcing on February 7, 1964, the suspension of Major McCallister and others, said: "Neither Chief Shea nor I will question the honesty and integrity of the suspended and disciplined officers. Their prior performance as police officers is not in question."

This conclusion is supported by testimony of Lieutenant Colonel Shea, who testified about a conversation with appellant when he informed him of his suspension, as follows:

"Q What was the charges you told him?

"A General inefficiency.

"Q Now, you had no other charges that you made against him at that time, did you?

"A No, sir, I did not.

"Q And you know of no other violation of any rule or regulation, any rule or any violation of duty except general inefficiency, is that right, Colonel?

"A Yes, sir."

On this subject, Chief Brostron testified as follows:

"Q Now, coming back to the question for an answer, Chief Brostron, is it true

that neither Chief Shea nor you are questioning the honesty and integrity of Major McCallister?

"A That is correct. There was no question about his honesty and integrity.

"Q And his prior performance as a police officer is not in question, is it?

"A My answer to that would be his prior performances in lesser rank would not be questioned as far as I am personally concerned.

"Q I understand, you mean his prior performance while he was a Captain, for instance, is that true?

"A Yes, sir."

It seems clear that § 84.120, which provides for appointment of persons to the Police Force, establishes a right in the appointee to continue as a member thereof and that such right may be taken from him involuntarily only for cause after a hearing by the Police Board. When a patrolman is promoted to officer rank pursuant to § 84.170(1), he then acquires an additional right under § 84.150 to retain such commission and position, which may be taken from him involuntarily only for cause after a hearing by the Police Board. The promotion to officer rank does not take away his right under § 84.120 to remain a member of the Police Force unless removed therefrom for cause.

It is entirely possible, of course, to seek in a single proceeding to take away an officer's commission and to remove him from membership on the Police Force. We have concluded, however, that this was not done here. There is no allegation in the charge or specifications which attacks the qualification or right of appellant to remain as a member of the Police Force. The charge is limited to asserted deficiency in performance of the duties of command in his capacity as Major in charge of the North Area. This is clear from the language of the charge and specifications and from the statements of Chief Brostron

and Lieutenant Colonel Shea and of counsel for the Department.

In view of the pleadings, we hold that the decision of the Police Board to dismiss appellant from the Police Force was not authorized or justified. The most that the Board could do upon a finding of guilty of the charge upon which appellant was tried would have been to remove him from his assignment as Major in charge of the North Area and reassign him to some other position on the Police Force and reduce him to such rank as the Board should decide upon, based upon the evidence received. This was not done since the Board ordered appellant discharged from the Force. Consequently, it is necessary for us to reverse and remand this case to the Board so as to afford it the opportunity to make a decision as to the discipline and reassignment to be ordered in conformity with this opinion. We announce this conclusion at the outset since it affects the question of which of appellant's other assignments we must consider on this appeal.

Appellant attacks the sufficiency of the charge against him. He asserts that the offense of "general inefficiency" listed in Rule 15, Section 2 of the Police Manual (the charge on which appellant was tried) is indefinite and is void for vagueness. It does not, he says, establish an ascertainable standard of guilt and fails to give him fair warning in advance of conduct for which he could be removed. He asserts a lack of constitutional due process under the Federal and State Constitutions, claiming an absence of the basic ingredients of sufficient notice, an opportunity to be heard and a fair trial.

Due process of law, in the constitutional sense, is not involved in this case. The Legislature, in creating this Police Force and the various commissioned offices thereon, could have provided for tenure at will of the Police Board. The Legislature, in creating an office, may provide for such tenure as it sees fit to establish. Here, in the same section which

authorized officers of various ranks, it provided for removal from one's commission as a police officer for cause (§ 84.150).[2] The question presented is one of whether the procedure followed conforms to the statutory requirements. State ex rel. Joos v. Guy, N.D., 125 N.W.2d 468, 472. See also State ex rel. Reid v. Walbridge, 119 Mo. 383, 24 S.W. 457.

Appellant does not attack the sufficiency or constitutionality of § 84.150 or the fact that it does not define "for cause." Appellant's brief recognizes that removals for cause may be made, provided that one charged is given the basic ingredients of due process, i.e., notice, an opportunity to be heard and a fair trial.

"For cause" means legal cause. It " 'must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public.' " State ex rel. Rockwell, Commissioner v. State Board of Education et al., 213 Minn. 184, 6 N.W.2d 251, 260, 143 A.L.R. 503; State ex rel. Joos v. Guy, supra; Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5; 67 C.J.S. Officers § 60, p. 248; 62 C.J.S. Municipal Corporations § 508(a), p. 947; 43 Am.Jur., Public Officers, § 205, p. 47.

Actually, if the Police Board had not adopted Section 2 of Rule 15 and had provided merely that a charge should allege the details of the asserted cause for discipline or dismissal, and had prescribed the procedure to be followed (as Rule 15 does), a charge that appellant should be removed from his commission for cause on the basis that he had been generally inefficient in various specified particulars would have been sufficient if, in fact, the acts alleged would constitute cause for such action by the Police Board. It would give adequate notice of the conduct on which removal would be sought.

The adoption by the Police Board of Rule 15, Section 2, does not alter the fact that a commissioned officer of the Police Force may be removed from that commission only for cause. Section 84.170 (2), under which such rule was adopted, provides that rules and regulations adopted must not be inconsistent with the sections of Chapter 84. Rule 15, Section 2, merely consists of an enumeration by the Police Board of acts which the Board would consider to amount to cause. It did not constitute or provide grounds for removal in addition to the statutory ground of cause. The rule required that the specifications elaborate upon and give the facts upon which the charge is based (Rule 15, Section 11). If any charge listed in Section 2 of Rule 15, together with the specifications accompanying the same, should be found not to amount to cause for removal from the officer's commission, it is apparent that this court would be obligated to so hold if the Board sought to remove an officer from his commission on that account.

Appellant complains of the use of the term "general inefficiency." Inefficiency has been held to be a ground or cause for suspension or removal of public officers. " 'Inefficiency,' as a ground for removal, is the quality of being incapable of doing, or indisposed to do, the things required of an officer, * * *." 67 C.J.S. Officers § 60(5), p. 253. See also 43 Am.Jur., Public Officers, § 197, p. 41. The specifications included in the charge itemized the details of the asserted inefficiency. They alleged acts relating to the administration of his office, were of a substantial nature, and do affect the public interest. The addition of the word "general" preceding "inefficiency" did not make the charge less adequate or understandable as notice to appellant of the grounds on which his actions as Major in charge of the North Area were alleged to be deficient and therefore a basis for removal from his command.

---

2. We do not discuss § 84.120 since the charge did not attack appellant's performance as a member of the Police Force but it contains the same feature.

The allegations were sufficient to tell appellant the cause for which his removal was sought.

We are of the opinion that there has been compliance with the due process requirement of adequate notice to appellant of the cause for which removal of his officer's commission was sought.

A second assignment of appellant which we must consider is his contention that there was no substantial and competent evidence on the whole record that he failed to establish an effective line inspection system or that, if he did so fail, he was generally inefficient.

■ At the outset, we recognize the type of judicial review contemplated by § 536.140 of the Administrative Procedure Act. The action of the Police Board here being reviewed involves the exercise of discretion and "It is too well settled to require citation that neither the trial court nor this court may substitute its judgment on the evidence for that of the board. The inquiry by the circuit court and that of this court is limited to ascertaining whether the board could have reasonably made its findings and reached its result upon consideration of all the evidence before it and whether the board's decision was clearly contrary to the overwhelming weight of the evidence." Johnson v. Priest, Mo.App., 398 S.W.2d 33, 35. Furthermore, as stated at page 36 of said opinion, "It has repeatedly been stated that, in reviewing matters of this nature, the circuit court, and this court, should adhere to the rule of deference as to findings involving the credibility of witnesses appearing before the administrative board. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; State ex rel. Bond v. Simmons, Mo.App., 299 S.W.2d 540." See also Willens v. Personnel Board of Kansas City, Mo.App., 277 S.W.2d 665.

■ Appellant offered considerable evidence to indicate satisfactory performance of his job as Major in charge of the North Area in other phases of his work as well as the matter of establishing an effective line inspection system. The question for us to decide, however, is not what we would have concluded from all of the evidence. Rather, we must determine whether the finding that appellant was directed to but failed to establish an effective line inspection system in his command and that operational deficiencies in his command did not show improvement is supported by substantial and competent evidence on the whole record. Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626; Johnson v. Priest, supra. We hold that it is. Such failure would constitute general inefficiency and cause for action by the Police Board. The testimony indicated that crime was on the increase and the department was shorthanded. Effective use of personnel was essential to effective functioning of the command. Adequate inspection of operations and resulting discipline and instruction was necessary. The Board had made the policy decision that a separate system of staff inspection, plus a system of line inspection, should be utilized. The determination of policy was the prerogative of the Police Board. It was appellant's duty to carry out that policy. He had no right to do otherwise on the basis that he disagreed with the policy established. He had the unmistakable duty to carry out that policy and the orders given in connection therewith. It would be an intolerable situation if an officer in such a command position could decline or fail to carry out the directed policy of the policy-making board and not be subject to removal for such cause. Even if the officer did the rest of his work in a satisfactory manner, his command position made it essential that he carry out the inspection program according to directions, and his failure to do so would make him inefficient as the commanding officer of the North Area. It would provide a basis for removing him from that position.

■ Appellant also asserts denial of due process in that he did not have a fair

hearing for various reasons. The first contention in this respect is that the Rules of the Police Board, including Rule 15, Section 2, were ineffective for failure to file a certified copy thereof with the Secretary of State pursuant to § 536.020 of the Administrative Procedure Act. Paragraph 2 of that section provides that rules become effective ten days after filing.

This contention by appellant overlooks the definition of "Rule" set out in § 536.010. It provides that "Rule" as used in the act "does not include regulations concerning only the internal management of the agency and not directly affecting the legal rights or privileges of, or procedures available to the public." The Manual of the Police Department contains regulations which concern the internal management of the department and § 536.020 is inapplicable. Filing of a copy of these Rules with the Secretary of State was not required as a condition to applicability of the Rules to appellant.

▆▆▆ The second contention relating to asserted lack of a fair hearing concerns the admission and exclusion of evidence. One such complaint is that the Board improperly received hearsay evidence. It is true that the Board took the position that it was entitled to receive hearsay evidence and that the customary rules of evidence did not apply in that respect. On that basis, for example, Chief Brostron was permitted to testify as to conversations with Lieutenant Colonel Shea at which appellant was not present. This was contrary to what this court has ruled previously. For example, in State ex rel. De Weese v. Morris, 359 Mo. 194, 221 S.W.2d 206, 209, the court said: "It stands adjudged that hearsay evidence and conclusions based upon hearsay do not qualify as 'competent and substantial · evidence upon the whole record' essential to the validity of a final decision, finding, rule or order of an administrative officer or body under § 22, Art. V of the Missouri constitution of 1945. The practically identical provision (Laws 1945, p. 1509, § 10(f) (3), Mo.R.S.A. § 1140.110(f) (3) of the Administrative Review Act, which implements said § 22 of the Constitution, calls for like reasoning and a like holding. * * * The fact that technical rules of evidence do not control has been considered to permit of leading questions and other informalities but not to abrogate the fundamental rules of evidence. Novicki v. Department of Finance, 373 Ill. 342, 26 N.E.2d 130, 131 [1–4]." However, reception of hearsay evidence does not dictate a reversal unless there is not sufficient competent evidence to sustain the decision. In State ex rel. City of St. Louis v. Public Service Commission of Missouri, 329 Mo. 918, 47 S.W.2d 102, this court held that it could not reverse an order of the Public Service Commission for receiving incompetent evidence, unless the order and decision was based thereon, and that the court could and would determine whether the finding of facts by the Commission was supported by competent substantial evidence. We do that in this case and hold that there is sufficient competent evidence to sustain the Board's finding that appellant failed to establish an effective line inspection system, that operational deficiencies in the area did not show improvement, and that appellant was inefficient.

▆▆▆ Appellant also complains of admission of other evidence, consisting largely of various reports and records from the files of the Police Department (staff inspection reports and line inspection reports, for example) and statistical summaries and charts based thereon. Much of the evidence objected to was admitted on the basis of the Uniform Business Records as Evidence Law, §§ 490.660–490.690. Considerable latitude is allowed in the admission of such records. State v. Weindorf, Mo., 361 S.W. 2d 806. We have reviewed the assignments, the evidence received and the authorities cited. To detail each specific instance and to discuss each would greatly lengthen this opinion without, in our judgment, serving any useful purpose. We have con-

cluded that appellant was not prejudiced by the admission of such evidence.

Much the same is true with respect to asserted error in exclusion of evidence and restrictions on cross-examination. In most instances appellant was permitted to interrogate the witness for the purpose of making an offer of proof and then to make a formal offer. These were sufficient to make it apparent what appellant sought to show and to permit its consideration, if competent. In other instances appellant sought to delve into details with respect to suspension of the South Area Commander and the two Lieutenants and six Sergeants who were suspended on February 6, 1964, along with appellant. He also sought to show that Lieutenant Colonel Shea had done nothing to improve supervision and was deficient himself. These were collateral issues to the question of whether appellant was guilty of the charge against him. Cross-examination by appellant was quite extensive and not unduly limited. In any event, after consideration of all of these assignments, we find no prejudicial error.

Another issue, related to the admission of evidence and raised in connection with whether appellant had a fair trial, involves the action of the Board in overruling a pre-trial motion for leave to interview certain members of the Police Force. He claims that such action denied to him the opportunity to prepare adequately for his defense.

On August 25, 1964, appellant filed a motion in which he recited that he was advised that the Department would offer in evidence various exhibits which would disclose the results of staff inspections in the North Area covering a period of time from January, 1963, to February 6, 1964. He further alleged that the findings of staff inspectors had not been revealed to the patrolmen inspected and that the latter had no opportunity to explain their conduct or deny the accuracy of the field inspector's reports. He asked that he be permitted to

interview the patrolmen and have them check their daily activity sheets and the radio tapes of their calls in order to answer questions put to them. It was requested that these patrolmen (the number involved is estimated by the Department at approximately 170) be given time off for this purpose. Appellant asked the right to orally interview such men and also offered to send out a joint letter and questionnaire with the Department relative to these matters. The Department responded that the records of the Field Inspection Division, as well as other Department records, had been made available to appellant and his counsel months previously and that these contained a full description of the deficiencies and the names of each officer involved. The Department offered to send a proposed questionnaire to each police officer and to furnish appellant with copies of all responses, but otherwise urged that the motion be overruled. Appellant responded by withdrawing his offer to send out a questionnaire. On September 8, 1964, the Board overruled appellant's motion but indicated that it would be agreeable to the questionnaire procedure proposed by the Department. Appellant declined that offer.

We hold that the action of the Board on appellant's motion for permission to interview was not prejudicial error. Appellant's motion indicates that he sought to obtain evidence that on some occasions police officers, reported by staff inspectors as failing to conform to prescribed procedure, had an explanation or reason for doing what they did. This was a purely collateral issue, not properly triable in this proceeding. Staff inspectors were to report apparent irregularities or deviations from established procedure and rules. The staff inspectors were not to seek explanations or to correct persons observed. The staff reports were not to be on the basis of disciplinary action. Staff inspections were merely a check by the Chief of Police on efficiency of line activity. Field Operations officers, by means of line inspections, were obligated to detect deviations

from rules and prescribed procedure. They were to instruct and discipline, if necessary, for such irregularities. Reasons and explanations for the irregular actions then became important, and would affect whether discipline was indicated. Nevertheless, line inspection reports still were to include all irregularities or deviations observed, even if explainable. Under such circumstances, it was unnecessary and improper for the Board in this proceeding to go into the merits of discrepancies reported in staff inspection reports. The interviews sought on this issue could not have had any probative value in determining whether appellant had established a line inspection system such as he had been directed to establish and operate. Furthermore, such evidence would have increased tremendously the length of a record which already was too long. We also observe that appellant himself testified that he never questioned the accuracy of the staff inspection reports, and further that the record discloses that Field Operations personnel, when serving on detached duty in the training program, observed and reported substantially the same percentage of deficiencies and irregularities as did staff personnel.

Counsel for the Department also point out that the motion was not filed until shortly before the case had been set for hearing on September 14, 1964, and that the time available was then much too short for the interviews sought and was not timely.

We overrule appellant's contention that he was prejudiced by action of the Board in overruling the motion to interview officers which was filed August 25, 1964, and renewed during trial.

In view of the fact that we have reversed the order of the Board, other assignments, including one that two of the three members of the Board who heard this case were biased and prejudiced against him, need not be considered. A new Board has been appointed and will decide the case and fix the discipline to be imposed.

On remand, the Board may consider and decide the case on the record previously taken and it may, if it so elects, hear additional evidence. It should not consider and rely upon the hearsay conversations which we have held were inadmissible.

The Department should be given the opportunity, if it so elects, to file an additional charge which asserts cause for removing appellant from membership on the Police Force. If an additional charge is filed, the Board shall conduct a hearing thereon. Evidence previously taken may not be considered on any new charge, unless by stipulation, since there was no charge against appellant attacking his rights under § 84.120 when that evidence was heard.

The judgment of the Circuit Court and the order of the Police Board are reversed and the cause is remanded for further proceedings in conformity with this opinion.

All concur.