**CITY OF KIRKWOOD, a Municipal Corporation, Petitioner-Respondent,**

v.

**MISSOURI STATE BOARD OF MEDIATION, and Local 2, International Brotherhood of Electrical Workers, AFL–CIO, Respondents-Appellants.**

Nos. 34243, 34247.

Missouri Court of Appeals,
St. Louis District.

Feb. 22, 1972.

Motion for Rehearing or to Transfer to
Supreme Court Denied
March 23, 1972.

Application to Transfer Denied May 8, 1972.

Kappel, Neill, Staed & Wolff, Robert E. Staed, St. Louis, for petitioner-respondent.

Daniel C. Rogers, Fayette, Schuchat, Cook & Werner, James K. Cook, St. Louis, for respondents-appellants.

DOERNER, Commissioner.

The Missouri State Board of Mediation and Local 2, International Brotherhood of Electrical Workers, AFL–CIO, separately appealed from the judgment of the Circuit Court of St. Louis County reversing an order of the Board. On our own initiative we ordered the appeals consolidated for hearing. In the interest of brevity the City of Kirkwood will be referred to as the City, the Missouri State Board of Mediation as the Board, and Local 2, International Brotherhood of Electrical Workers, AFL–

CIO, as the Union. Although it is one of the appellants the Board has not favored us with a brief, nor has it joined in the brief filed by the Union.

In 1970 the Union informed the City that a majority of the employees of the City's forestry department had authorized the Union to represent it for the purposes of collective bargaining and requested the City to grant it such recognition and to enter into such bargaining. The City rejected both requests. The Union then petitioned the Board for assistance. The Board held a hearing, in which both parties participated, and entered findings of fact and an order declaring, (1) that the employees of the forestry department of the City constituted an appropriate bargaining unit; and (2) that the Union was the exclusive bargaining representative of the employees in that unit. The City appealed and, as stated, the trial court entered a judgment reversing the order of the Board.

■■■ Unfortunately, before submission of the case to the trial court neither party requested the court to dictate to the court reporter, or to file a brief opinion, of a statement of the grounds for the court's decision, pursuant to Civil Rule 73.01(b), V.A.M.R.[1] The judgment of the trial court furnishes no clue as to the basis of its judgment for it merely reads, "The order of the State Board of Mediation is Reversed." We use the word "unfortunately" advisedly for the result has been, as is apparent from the briefs, that the parties, as well as this court, have been left in the dark as to the grounds for the court's judgment. Thus the points advanced by the parties as to why the judgment should, or should not, be reversed cover a wide spectrum in their briefs, and in the main do not coincide. It is appropriate to note that since this appeal falls within the ambit of our Administrative Procedure Act, Chapter 536, the scope of our review is limited to those matters enumerated in § 536.140. And with regard

to the Board's findings of fact our review, as was the trial court's, is restricted to ascertaining whether the Board could have reasonably made its findings and reached its result upon consideration of all the evidence before it and whether the Board's decision was clearly contrary to the overwhelming weight of the evidence. McCallister v. Priest, Mo., 422 S.W.2d 650; St. Louis County v. State Tax Commission, Mo., 406 S.W.2d 644; Johnson v. Priest, Mo.App., 398 S.W.2d 33.

■■■ As indicated, the Board found and ruled that the employees of the City's forestry department comprised an appropriate bargaining unit. In § 105.500(1), RSMo 1969, V.A.M.S., an "appropriate unit" is defined as

"* * * a unit of employees at any plant or installation or in a craft or in a function of a public body which establishes a clear and identifiable community of interest among the employees concerned."

The City's own evidence showed that tree trimming, pruning and related activities were originally performed by relatively unskilled employees of the City's street department, but that in an effort to place such work on a more professional basis the City created the forestry department as a separate department of the City's governmental structure, employed an experienced forester, named Brickey, as superintendent of forestry, and gathered under him the men who had primarily served in some forestry capacity. There was evidence, not disputed, that Brickey occupied a separate office in the city hall, marked forestry, that the forestry department had its own tool room, in which it kept its own hand tools and equipment, that trucks and other automotive equipment, marked "forestry department," were assigned to it for its own use, and that the employees of the forestry department kept their own time and assign-

1. The Union made a written request after the trial court had entered its judgment, which request the court denied. Of

course, such a request came too late. Civil Rule 73.01(b); McIntosh v. White, Mo.App., 447 S.W.2d 75.

ment records. The evidence further showed that while, on special occasions, such as during the leaf gathering season in the Fall, one or two men from the forestry department might be temporarily assigned to another department, such interchanges of employees were limited, and in the main the work of the employees of the forestry department were those of tree trimming, pruning, planting, mowing grass in City owned areas, and similar activities. The evidence disclosed that the City owned most of its own electrical distribution system, and that it contracted with an independent concern for the clearing of the City's wires; that another independent concern performed similar work for the Union Electric Company; and that the Union was the exclusive collective bargaining representative for the employees of about six private concerns which did tree trimming and related work. In short, the evidence showed that the forestry department was created to better carry out a particular function, that it was a separate and independent segment of the City's governmental structure, and that it was supervised, administered and controlled by its own staff. And it further showed that the activities and work of the employees of the department were restricted primarily to carrying out the special function of the independent department, and that their activities closely corresponded to those of the members of a recognized craft performed by employees of private enterprises. We are of the opinion, and hold, that there was ample evidence to support the Board's finding and order that the employees of the City's forestry department constituted an appropriate bargaining unit, and that if the trial court's reversal of the Board's order was based on an opinion to the contrary it erred.

The remaining finding and order of the Board concerned the issue of majority status of the Union as the exclusive bargaining representative of the employees in the unit. The phrase "exclusive bargaining representative" is defined in § 105.500(2) to mean:

"* * * an organization which has been designated or selected by majority of em-

ployees in an appropriate unit as the representative of such employees in such unit for purposes of collective bargaining."

Neither in that section nor in any other part of the act is there any provision as to the manner in which such designation or selection is to be made by the employees, nor any indication as to the nature of the evidence necessary to be produced to enable the Board to resolve the issue of majority representative status.

Prior to the introduction of any evidence at the hearing before the Board the City, by a written motion for the dismissal of the proceedings, as well as orally, it first took the position that an election should be held at which the employees could vote on the question of whether they desired the Union to represent them as their exclusive bargaining representative. The record before us shows that the Board readily agreed that it would hold an election for the purpose, as it had in other cases. The Union likewise immediately agreed to the holding of such an election. The transcript clearly shows that after the Union and the Board had agreed to the City's proposal the City then backtracked and despite the Board's suggestions as to a date for the election, the determination of those who would be eligible to vote, and the manner in which the election would be conducted in order to insure its fairness, one of the attorneys terminated any further discussion of the subject by stating: "And we don't think that the attorneys or the parties present have the authority to make this decision (as to the holding of the election) without having it presented to the full Council and approved in a regular session." The Chairman then stated that the Board would hear evidence on the issue.

The uncontradicted evidence was that the City for about 20 years had recognized the Union as the exclusive bargaining representative of the approximately 18 employees in the City's electrical department and had entered into a memorandum of understanding with the Union concerning

wages, pensions, and other conditions of employment. The evidence also showed that Leroy Kneip, one of the employees of the forestry department, had approached an employee of the electrical department, named John, stated that the employees of the forestry department wanted to go union, and asked John to obtain cards for them; that John obtained what are called "authorization cards" from the Union and gave them to Kneip; that all of the employees of the forestry department filled out and signed the cards in the presence of Kneip, and that they were delivered to the Union by John. Robert Missey, the business manager of the Union, testified that he had had no contact with the employees of the forestry department before the cards came into his possession, and that the organizational efforts of the employees of the forestry department were initiated by the men themselves.

Eight signed cards were introduced into evidence, but it was shown that some employees had left the employment of the forestry department and that only four remained at the time of the hearing. The cards introduced are headed, in bold type, "Authorization for Representation" immediately followed in smaller type, with the statement "I authorize the International Brotherhood of Electrical Workers, to represent me in collective bargaining with my employer."

■■ By § 105.525 the Board is directed to resolve the issue as to majority representative status. In the absence of any criteria in the act as to the means to be used by the Board in resolving that issue it would appear that the General Assembly left the means to be used to the discretion of the Board. We are not unmindful of the criticism that has been leveled at the occasional use of authorization cards as the means of determining the question of majority status of a union as the exclusive bargaining representative in proceedings before the National Labor Relations Board, and we agree with the apparent preference of the Board for a secret election, properly conducted, as the means of resolving the issue. However, in the light of the City's refusal, without the passage of a formal resolution by its Council authorizing its attorneys to consent to such an election (which it would appear could have been adopted in ample time prior to the hearing) the City is in a poor position to now criticize the method followed by the Board. Furthermore, there was no evidence introduced by the City controverting the testimony that the employees, of their own free will and without any contact by the Union, had executed the authorization cards designating the Union as their exclusive bargaining representative. We hold that there was sufficient competent evidence to support the Board's finding and order on the issue of majority representative status, and that the trial court erred if it reversed the Board's order because of a contrary view.

■ The next point in controversy requires us to construe § 105.525 which reads:

"Issues with respect to appropriateness of bargaining units and majority representative status shall be resolved by the state board of mediation. In the event that the appropriate administrative body or any of the bargaining units shall be aggrieved by the decision of the state board of mediation, an appeal may be had to the circuit court of the county where the administrative body is located or in the circuit court of Cole county. The state board of mediation shall use the services of the state hearing officer in all contested cases."

The City contended below, and asserts here, that inasmuch as the issues referred to in that section were contested it was mandatory upon the Board to use the services of the state hearing officer. When the City's contention was made at the start of the hearing the Chairman of the Board stated that it would use the services of such an officer if one existed but that a search of the statutes had failed to reveal any one with the title of "state hearing officer," and invited the City to tell the Board of the

identity of the person so designated in Section 105.525. The City replied that it was not its duty to find the state hearing officer if the Board couldn't, but persisted in its objection that his services had to be utilized. In its brief, while maintaining that the services of the state hearing officer were required, the City has carefully refrained from revealing to us the identity of the officer so named.

The fact of the matter is, as the City seemed reluctant to state, the statutes do not provide for anyone with the title of "state hearing officer." The closest we have come to any one with such a title as the result of our own research is that of "Administrative Hearing Commission," composed of a single commissioner, referred to in § 161.252. But opposed to that possible interpretation is the fact that the duties of that commission as outlined in § 161.272 relate only to the subject of licenses issued by the Missouri State Board of Accountancy and other agencies enumerated therein, and are entirely foreign to the field of labor relations. We are likewise aware that a "public hearing panel" is mentioned in § 295.120, to arbitrate labor disputes between the management of a public utility and bargaining representatives for its employees, but the panel is to be composed of three persons, not one officer.

While § 105.525 provides that the Board shall "use the services" of the state hearing officer it also states, in equally mandatory language, that "Issues with respect to appropriateness of bargaining units and majority representative status shall be resolved by the state board of mediation. * * *" Such language would indicate that the scope of the function of the hearing officer, at best, would be limited to that of conducting the hearing and of making recommendations, since the statute expressly states that the Board must resolve the contested issues.

Section 29 of Article I of our present Constitution, V.A.M.S., provides, "That employees shall have the right to organize and to bargain collectively through representatives of their own choosing." In City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, the Supreme Court en Banc said that public employees had the right under the First Amendment to the United States Constitution, Sections 8 and 9 of the 1945 Constitution, and Sections 14 and 29, Art. II, of the 1875 Constitution to peaceably assemble and organize, and to present their views to any public officer or legislative body before the adoption of Section 29 of Article I of our 1945 Constitution. But the Court held that the purpose of Section 29 was to safeguard collective bargaining as that term was usually understood in employer and employee relations in private industry, and that the section could not be construed to confer upon public employees the right to bargain collectively. In 1965 the General Assembly enacted legislation which declared, with certain exceptions, that public employees had the right to organize, to present "proposals" to any public body through the employee's chosen representative, and provided that the public body "may" engage in negotiations with labor organizations relative to salaries and other conditions of employment of the public employees, S.B. 112, Laws 1965, p. 232, subsequently codified as §§ 105.500 to 105.530, RSMo Supp.1965. Subsequently the legislature repealed those sections and in lieu thereof enacted the present §§ 105.500 to 105.540, inclusive. Laws 1967, p. 193. The principal difference between the 1965 Act and the 1967 Act, in our opinion, is twofold. First, it requires that a public body, "shall meet, confer and discuss" with the exclusive bargaining representative of its employees as to proposals relative to salaries and other conditions of employment, and that the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection. And two, it provides that the State Board of Mediation shall resolve contested issues regarding the appropriateness of a proposed bargaining unit and majority representative status. While apparently loath to equate the words, "meet, confer and discuss" with

the term "collective bargaining" guaranteed to employees in private industry by Section 29, Article I, 1945 Constitution, the Supreme Court en Banc in State ex rel. Missey v. City of Cabool, Mo., 441 S.W.2d 35, held that the 1967 Act was constitutional.

■ From this background of the applicable constitutional and statutory provisions it is apparent that one of the primary purposes of the 1967 Act was to provide a forum for the resolution of contested issues between the parties regarding the appropriateness of the bargaining unit proposed by the employees therein and the majority representative status of the organization which asserts that it has been designated or selected by a majority of such employees as their exclusive bargaining representative. To hold, as the City asserts, that in the event the foregoing issues are contested the Board may not perform the duty placed upon it by § 105.525 unless the Board first uses the services of the "state hearing officer" would lead to an absurd result. This for the reason that since no such officer exists, the Board would be forever barred from proceeding to resolve the contested issues. We cannot presume that the legislature intended such an absurd result as would follow from a literal adherence to the last sentence of § 105.525 which creates the ambiguity. In such a situation what was said by the Supreme Court in Leibson v. Henry, 356 Mo. 953, 204 S.W.2d 310, 315, regarding a similar situation is applicable here:

"'It is a general rule that the courts, in the interpretation of a statute, may not take, strike, or read anything out of a statute, or delete, substract, or omit anything therefrom. To the contrary, it is a cardinal rule of statutory construction that significance and effect should, if possible, be accorded to every word, phrase, sentence, and part of an act. However, there are cases in which words of a statute are so meaningless or inconsistent with the intention of the legislature otherwise plainly expressed in the statute, that they may be rejected as surplusage, and omitted, eliminated, or disregarded.' * * *"

And see City of Joplin v. Joplin Water Works, Co., Mo., 386 S.W.2d 369 and State ex rel. Consolidated School Dist. No. 1 v. Hackmann, 302 Mo. 558, 258 S.W. 1011.

Accordingly, we hold that the Board's action in disregarding the ambiguous provision of the statute and in proceeding to hear and resolve the contested issues presented by the parties was proper, and that if the trial court overruled the Board's order because of a contrary opinion it erred.

■ Having considered the three points raised by the Union, the last of which was conversed by the City in its brief, we turn to the remainder of the points presented in the City's brief. Under its first assignment it asserts that the Board's findings and order were made upon unlawful procedure and without fair trial; that the actions, findings and order of the Board were arbitrary and capricious; and that the actions and decision of the Board constituted a flagrant abuse of discretion. In the argument portion of its brief all of the foregoing subpoints are covered in one lengthy discussion, and it is difficult to determine what the City conceives by such terms as "unlawful procedure and fair trial," "arbitrary and capricious," and "flagrant abuse of discretion." As best we understand the City's brief, its principal complaint is that after the Union had requested the Board to resolve the contested issues heretofore discussed the Chairman of the Board, in the course of a letter to the City setting the date for a hearing, as expressed in the City's brief, "* * * urged the City to recognize the Union and make an agreement with them." (City's emphasis) However, in the same letter the Chairman of the Board also stated that if the parties failed to reach a voluntary agreement the Board would hold the hearing on the day stated. It may be that as Chairman of an administrative agency the Chairman, in writing the letter in question, had in mind

the provisions of § 536.060 regarding an informal disposition of the case by an agreement of the parties. Furthermore, it is not unusual for a judge prior to the trial of a case to suggest, or even urge, that the parties attempt to dispose of it by a settlement, and we regard the Chairman's letter in the same light. Other than the letter itself there was no evidence that the Chairman, or the Board, had sought to compel or bring any pressure upon the City to enter in to an agreement regarding the contested issues. In the same letter the Chairman indicated that the authorization cards previously discussed would constitute the only evidence necessary to submit to the Board the issue of majority representative status. However, as indicated in the discussion at the hearing between the Chairman and the parties preceding the introduction of any evidence, neither the Chairman nor the Board held the opinion that such authorization cards in and of themselves, in all cases and without further evidence as to their authenticity or validity, would constitute sufficient evidence on that issue. As heretofore noted, such supporting evidence was introduced in this case. And here the usual alternative, a secret election, became academic when the City declined to enter into an agreement for such an election being conducted until it could first obtain from the City Council specific authority to enter into such an agreement.

We have experienced difficulty in determining what action or conduct of the Board the City considers as "arbitrary and capricious" or as a "flagrant abuse of discretion," the general charges leveled in its brief. A careful review of the transcript has not revealed any action or conduct which would support such charges or which would indicate that the City was not afforded a fair trial. If the trial court reversed for a contrary opinion it erred.

■ The City's next contention is that the Board was without jurisdiction to receive, hear and adjudicate the issues raised in the dispute between the City and the

Union because " * * * none of the issues involved relate to the governmental services and functions described in Section 295.010, Revised Statutes of Missouri." Of course they did not because that section deals with labor disputes affecting public utilities. But we know of no reason why the General Assembly could not, as it did in the cited 1967 Act, empower the Board to resolve designated disputes between public employees and public bodies, nor has the City advanced any tenable reason.

■ The City asserts that § 295.030 requires that five members of the Board be " * * * present at hearings of said Board," and complains because only three members sat in the instant hearing. The City is mistaken. That section provides for the appointment of a five-member Board but it does not require that all five must sit in a hearing. On the contrary, § 295.040 expressly states that " * * * and three members of the board shall constitute a quorum for the transaction of business." In that connection the City also refers to the caption of § 536.080, which reads: "Evidence to be heard by all officials—exception," and argues that the "record has not revealed any exception which would preclude all of the appointed members of the Board attending the hearing." That argument would indicate that the City read no further than the caption of that section. For the most casual examination of the text of that section reveals that it does not require that all members of a board or agency must sit in every case; what it requires is that all who participate in the making of the decision in the case must first consider the record and the arguments presented. Furthermore, the record in the present case shows that there was a vacancy on the Board of one employer member, so that if the remaining four sat there would be two union members and only one employer member, as well as the neutral chairman; and that only one labor member participated so that the Board would be balanced as to representative membership at the hearing.

■ Prior to the introduction of evidence the City inquired of the Board whether the latter had adopted rules and regulations governing a hearing. The Chairman answered that none had been promulgated. The City now argues that the decision of the Board was in violation of Article IV, Section 16 of the Constitution, and of Section 536.020, which require that rules and regulations of all state boards and agencies be filed in the office of the Secretary of State. The City interprets those provisions to mean that a board *must* adopt rules and regulations. Had the City more carefully read them it would have found that what they provide is that *if* a board adopts rules and regulations they must be filed with the Secretary of State.

■ The City's next complaint is that the Board recalled Missey, the Union's business manager, and propounded to him what the City contends was a leading question. The record shows that the City did not object when Missey was recalled, nor did the City object when the question was propounded. The inquiry was as to Missey's opinion regarding the validity of the authorization cards. Even if his answer is disregarded there was ample other evidence, which we have stated, regarding the voluntary execution of the cards by the employees.

■ The City also asserts that the Chairman acted as an advocate, but the record does not support such a complaint. We note that the decision and order of the Board was unanimous and concurred in by all three of its members, including the employer member.

■ Lastly, the City asserts that the Board made no findings of fact, and that what the Board termed findings of facts were actually conclusions of law. We cannot agree. On the first issue the Board found that the employees of the City's forestry department constituted a craft of specialized workmen, and that as a group they qualify as an appropriate bargaining unit pursuant to § 105.500. As to the second, the Board found that the membership cards introduced, together with the oral testimony supporting them, established the majority representation for the appropriate bargaining unit, pursuant to § 105.525. We hold that the foregoing were findings of fact on the ultimate issues which the Board was required by § 105.525 to resolve, and not conclusions of law. Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.2d 601; Miller v. Sleight & Bellmuth Ink Co., Mo., 436 S.W.2d 625. If the City desired more specific findings it should have requested them. Section 536.090; State ex rel Zimmerman v. Moran, Mo., 439 S.W.2d 503; Miller v. Sleight & Bellmuth Ink Co., supra.

■ We have carefully reviewed all of the points presented by the Union and the City, and for the reasons heretofore stated we hold that the trial court erred in reversing the order of the Board. The failure of the Board to file an appellant's brief in Cause Number 34,247 requires the dismissal of its appeal. Civil Rules 83.06, 83.09; Mayer v. Burnett, Mo., 433 S.W.2d 546.

It is the judgment of this court that the Union's appeal, Cause Number 34,243, is sustained and that the judgment of the trial court reversing the order of the Board is reversed; and that the Board's appeal, Cause Number 34,247, is dimissed for failure to comply with the Civil Rules.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, Cause Number 34,243 sustained and judgment reversing order of Board reversed; Cause Number 34,247 dismissed.

BRADY, C. J., and DOWD, SMITH, SIMEONE and WEIER, JJ., concur.