H. Lester **REYNOLDS**

v.

The **UNITED STATES.**

No. 267–69.

United States Court of Claims.

Feb. 18, 1972.

Nichols, J., concurred in part and dissented in part, and filed opinion.

John I. Heise, Jr., Silver Spring, Md., attorney of record, for plaintiff. Heise, Kyle & Jorgensen, Silver Spring, Md., of counsel.

Judith Ann Yannello, Washington, D. C., with whom was Asst. Atty. Gen., L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARA-MORE and DURFEE, Senior Judges, and DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

COLLINS, Judge.

Plaintiff, a former civilian employee of the Navy, seeks monetary relief in the nature of (1) back pay, amounting to $15,128 due to an alleged wrongful demotion in grade from GS–14 to GS–12 (with credit being given for an interim promotion to GS–13), for the period from the time of his demotion, June 5, 1966, to the date of his retirement, February 28, 1969, and (2) the retirement annuity differential resulting from the demotion, for the period following his retirement to the date of judgment.

This case is before the court on the parties' cross-motions for summary judgment. Additionally, plaintiff has moved, in the alternative, that in the event the court denies his motion for summary judgment, the court should also deny defendant's motion and remand this case to a trial commissioner on the ground that material issues of fact are in dispute regarding the alleged arbitrary and capricious actions on the part of plaintiff's supervisor, one Commander Cole. For the reasons hereinafter set forth, the court has decided to grant defendant's motion for summary judgment in part, deny plaintiff's cross-motion, and remand this case to the trial commissioner on the issue of Commander Cole's alleged biased and prejudiced actions.

Plaintiff was graduated from the University of Kentucky with a Bachelor of Science in Civil Engineering in 1939, and he is a registered professional engineer. After graduation from college plaintiff served the Federal Government in various civilian capacities utilizing his engineering skills. Most recently he served at GS–12 with the Navy Department as a Supervisor General Engineer, Director of Utilities Division at Great Lakes, Illinois. He later served with the Navy Department as Director, Utilities Division, Public Works, San Bruno, California, and on the Island of Guam.

In January 1963, plaintiff was appointed Director, Utilities Division, Chesapeake Division, Naval Facilities Engineering Command in Washington, D.C., at GS–14. Plaintiff's supervisor was Commander Cole. At all times prior to this appointment plaintiff had

received performance ratings of "satisfactory," "highly satisfactory," "very good," and "outstanding."

It is alleged by plaintiff that Commander Cole indicated at the outset that another applicant had been Cole's preference for the position to which plaintiff had been appointed. Plaintiff further alleges that Commander Cole began, and continued, to harass plaintiff as part of an overall plan to effectuate plaintiff's eventual removal from his position. For example, plaintiff alleges that, immediately following his appointment, he was the recipient of numerous memos and notes expressing disapproval with his organizational plans and management methods. Plaintiff claims that Commander Cole continued this program of harassment and eventually, on August 31, 1963, served plaintiff with a performance rating which contained several "adverse" comments of a minor and contradictory nature.

On April 30, 1964, plaintiff was issued a 90-day letter of warning of unsatisfactory performance. Thereafter, on July 31, 1964, plaintiff was issued a letter of proposed removal from Federal Service for inefficiency. Following and as a result of a full hearing on these charges, which took place from August 24 to September 14, 1964, plaintiff was demoted to a GS–12, effective as of March 1, 1965. Commander Cole retired on September 15, 1964.

In due course plaintiff appealed his demotion and, due to procedural errors in the hearing process, the demotion action was cancelled on May 28, 1965. Plaintiff was awarded retroactive compensation from March 1 to June 5, 1965.

By a second notice of charges, dated July 23, 1965, which was amended on November 4, 1965, plaintiff was again advised of a proposed adverse action, this time in the form of a change to a lower grade for inefficiency. The notice was signed by one Commander Morgan. A full hearing on these charges was held from November 8 to December 13, 1965, before a Hearing Advisory Committee of the Department of the Navy, and as a result plaintiff was demoted to GS–12 and the charges were sustained.

On May 31, 1966, the Commanding Officer, Chesapeake Division, Naval Facilities Engineering Command, sustained the decision to demote plaintiff, and, accordingly, plaintiff's demotion was effected on June 5, 1966. Plaintiff appealed this decision to the Commander, Naval Facilities Engineering Command. Again the ordered demotion was sustained. Plaintiff then appealed to the Secretary of the Navy. By decision dated December 29, 1966, the Secretary concluded, without a further hearing, that plaintiff's demotion was warranted and therefore the appeal was denied.

Having failed to "reverse" his demotion after exhausting all avenues of appeal within the Navy, plaintiff attempted to appeal to the Civil Service Commission Appeals Examining Office. The Appeals Examining Office disallowed the appeal on the ground that plaintiff had forfeited his right to appeal thereto by electing to take a second level appeal within the Navy Department, i. e., to the Secretary of the Navy. Plaintiff then appealed this decision to the Civil Service Commission's Board of Appeals and Review, which by decision dated June 2, 1967, affirmed the decision of the Appeals Examining Office. Plaintiff next requested the Commissioners of the Civil Service Commission to direct that his appeal to the Commission be entertained. By decision dated September 7, 1967, the Commissioners declined to permit plaintiff's case to be heard before the Commission and affirmed the decision of the Board of Appeals and Review.

On October 16, 1968, plaintiff was notified that he had been selected for promotion from grade GS–12 to GS–13, effective October 20, 1968. Plaintiff voluntarily retired from Federal Service, effective February 28, 1969.

Plaintiff filed his petition in this court on June 11, 1969.

At all times material herein plaintiff was a preference eligible as defined by the Veterans' Preference Act, 5 U.S.C. § 7511 (1970), and was a career civil service employee of the Department of the Navy. Plaintiff has attacked his reduction in grade, or demotion, on a number of grounds, all of which will be discussed below under appropriate headings and subheadings.

## I

## THE SPECIFICITY OF THE NOTICE OF CHARGES DATED JULY 23, 1965

Plaintiff first challenges his demotion on the ground that the charges as promulgated against him in the advance notice dated July 23, 1965, lacked the specificity required by the Veterans' Preference Act and Navy Department regulations.

Section 14 of the Veterans' Preference Act, 5 U.S.C. § 7512(b) (1) (1970), requires that in the case of an adverse action against a veteran, the notice must state "any and all reasons, specifically and in detail, for the proposed action." In commenting on this provision, this court has stated:

> The manifest purpose of this provision is to afford the employee a fair opportunity to oppose his removal, and the charges must be considered with the view of determining whether plaintiff was informed of the basis of the proposed action with sufficient particularity to apprise him of allegations he must refute or acts he must justify. The technical rules of criminal proceedings are not applicable here, and the facts and circumstances of a particular case are regarded as important in such an inquiry.

Engelhardt v. United States, 125 Ct.Cl. 603, 606 (1953). Similarly, the Navy Civilian Personnel Instructions § 750.5–3b (June 15, 1962) provides in pertinent part:

(3) *Specific charges.*

The advance notice shall state the charge or charges, and the evidence in support thereof, relating to the proposed action, specifically and in detail, including dates, specific instances and other data, sufficient to enable the employee to fully understand the charges and to adequately join issue with the proposed action. \* \* \*

The notice of charges contained six typewritten pages including nine numbered paragraphs. Plaintiff was charged with failing to carry out his assigned workload for the Utilities Division in paragraph 3a:

(1) You failed to accomplish, in a timely fashion, the transfer of responsibility to General Services Administration for the procurement of liquified petroleum gas (LPG) as directed by BUDOCKS message of 31 May 1963. This message requested such a transfer from Chesapeake Division, BUDOCKS to the GSA preferably on 1 July 1963, but no later than 1 July 1964. Although this matter was clearly your responsibility this function was not successfully transferred until 1 December 1964. It was necessary for CDR Cole, your supervisor, to bring this matter to your attention on 17 July 1964 because of an anticipated shortage of LPG at the Naval Ordnance Laboratory and to direct you to take immediate action to remedy the situation.

Plaintiff was also charged with failing to plan and organize the broad work phases of the division and to provide technical guidance through the establishment of divisional policies in paragraph 3b:

(1) Since 1 January 1964, when BUDOCKSINST 5450.73 went into effect and assigned certain specific financial responsibilities to the Utilities Division, as noted on page 25, paragraph 2 of the said instruction, you have failed to plan and organize adequately the financial management phase of the Division work load. For example, you failed to comply with CDR Cole's direction of 27 March 1964 for a comprehensive financial

survey covering three activities in order to support Budget Project 24 requests and justification. In the case of the one survey made by you at NATC, Patuxent River, pursuant to this request, your survey was found by CDR Cole and by the Management Coordination Officer to be non-responsive in that it did not furnish the information requested. In the case of the other two activities, namely the Naval Station, Washington, D.C. and the Naval Communications Station, Washington, D.C., you failed to submit the requested surveys. Despite further attempts by CDR Cole in discussions with you on 1 May and 13 May 1964, you failed to submit adequate financial analysis data in support of Budget Project 24 requests and justifications. As a result of your failure to assume your responsibility in this area of financial management, the Management Coordination Officer performed most of the work in developing the budget submission for FY '65 and your Division played a relatively minor role.

Plaintiff was further charged with failing to take necessary action to initiate the development of instructions and guides for optimum operations and maintenance of utilities plants and systems throughout the Chesapeake Division area of responsibility in paragraph 3c:

(1) During the period of January 1963 through July 1964 you did not effectively determine the optimum operations for the three major power plants within the Chesapeake Division area of responsibility, namely the U.S. Naval Academy, Annapolis, Maryland; the Naval Station, Washington, D.C.; and the Naval Propellant Plant, Indian Head, Maryland.

(2) You have failed to prepare instructions, comparison graphs and charts, and cost of production data required for proper management of the various utility plants and systems under Chesapeake Division cognizance.

In connection with the charge that plaintiff had failed to coordinate closely related functions within his division and to insure coordination with the Chesapeake Division plaintiff was informed in paragraph 3d:

(1) In June and July 1964, you failed to coordinate with the Fire Protection Engineer, your proposed issuance of Change Order "H" to Contract NBy (U)–46832(21), which change order provided for the installation of a fire protection alarm system at the U.S. Naval Historical Display Center, Building 76, Washington Navy Yard, Washington, D.C. Your failure to coordinate your proposed change order necessitated its cancellation by CDR Cole to prevent the installation of a fire protection alarm system which was found by the Fire Protection Engineer to be unsatisfactory.

(2) You failed to coordinate or check with the Management Coordination Officer (60.1) in accordance with the requirements of BUDOCKSINST 5450.73 prior to preparing a memorandum of 8 July 1964 to the Financial Management Officer; Subj: First Quarter FY '65 MUSE Program Funds to Homeporting Activities in Area Public Works Office, Chesapeake; allotment of. This memorandum indicates your lack of knowledge concerning the status of MUSE funds in that you requested an allotment of funds when no funds were available, and your lack of knowledge of the administration of the MUSE funds in that these funds should have been provided by a Navy Comptroller Form 140 as opposed to establishing an allotment which you requested. As a result, your staff work in regards to this memorandum perpetrated error, and wasted effort within your Utilities Division. Your supervisor, CDR Cole, found these errors after you had signed and released your memorandum. CDR Cole had to direct his assistant (60.1) to re-do staff work

which you should have properly accomplished through coordination with Code 60.1.

(3) In June 1964, you failed to submit to the Contract Division accounting data necessary for awarding of Utilities contracts for FY '65, which was your responsibility to submit prior to 1 July 1964. It was not until 8 July 1964 and only after you were instructed to do so by CDR Cole, that your Division furnished the required accounting data to the Contract Division.

(4) During July 1964, in connection with the preparation of Maintenance Contract NBy–62576 on No-Break Units for the Naval Security Station, you failed to provide the Contract Division with information such as estimated contract cost; and with recommendations as to whether to negotiate, competitively bid or make a change order to the existing contract. Your failure to do so made it necessary for the Management Coordination Officer to develop and furnish this information and again assume a responsibility which was properly yours.

Finally, plaintiff was charged with failure to fulfill his responsibility to determine the needs for utility services and to conduct engineering studies to find adequate economical methods to meet the various utilities requirements in paragraph 3e:

(1) By direction of CDR Cole on 2 July 1964, you were instructed to resolve the problem of the then existing shortage of steam service at the Naval Ordnance Laboratory. This situation had previously been temporarily resolved by the loan of a boiler from NATC, Patuxent River, which loan was about to expire at the time of said direction. Although an earlier project to provide a new steam line was rejected by BUDOCKS on 19 June 1964 because of certain funding restrictions, on 10 July 1964, you made a further attempt to procure the said steam lines by designating it an emergency project. This effort failed again in that on 13 July 1964, it was ascertained that funds still were not available. No solution was arrived at until CDR Cole, on approximately 16 July 1964, requested you to re-examine your basic assumption that the boiler loan could not be extended by NATC, Patuxent River; whereupon you re-investigated and found that the loan could be continued, and the boiler was then made available to NOL on a permanent basis, resulting in a savings of at least $17,000. It is thus apparent that you failed to recognize a reasonable and economical solution to the problem and that the initiative for its resolution came from CDR Cole rather than from you, the person to whom the problem had been assigned.

The court finds that even a cursory reading of the notice of charges, quoted above, reveals that the charges were extremely specific and contained all the necessary information in compliance with the Veterans' Preference Act and the applicable Navy regulations.

Plaintiff further claims that the agency failed to supply him with certain documents along with the notice of charges in contravention of the Federal Personnel Manual Supplement 752–1, p. 30.01 (January 19, 1965), which provides in pertinent part:

(5) A notice of proposed adverse action may refer to a document or documents to which one or more of the charges are related. * * * This raises the question of whether the document referred to should be attached to the advance notice. The governing consideration here is whether or not the document contains any reasons or supporting details which are not contained in the advance notice. *If the advance notice contains all the essential elements to fully inform the employee and give him a fair opportunity to prepare a defense, there is no need for attachments, whatever references are made.* But if the information in the advance notice is so incomplete as to impose an

undue burden of defense on the employee, then attachment of the referenced document to supply details is required. \* \* \* [Emphasis added.]

This provision contemplates the attachment of referenced documents only when the notice of charges itself lacks the requisite specificity or detail. As determined above, the charges were indeed specific. Therefore, the regulation was not violated in the instant case.

■ The court concludes that, with respect to the issue of specificity, the charges were in compliance with the applicable statute and regulations, and, accordingly, as to this issue, defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied.

## II

THE HEARING BEFORE THE HEARING AND ADVISORY COMMITTEE OF THE DEPARTMENT OF THE NAVY (NOVEMBER 8 TO DECEMBER 13, 1965)

Plaintiff challenges the propriety of the hearing conducted by the Navy by alleging various procedural defects.

### A. Double jeopardy or res judicata

■ Plaintiff alleges that the notice of charges brought in 1964, which were found to be procedurally defective, are the same charges brought in 1965. Therefore, plaintiff argues, this is akin to double jeopardy, and, at the least, the prior proceeding in 1964 should be res judicata as to the 1965 action. This contention, however, is unsound since the first proceeding was "reversed" in plaintiff's favor because of procedural defects and it was not a decision for plaintiff on the merits. It is not unusual or wrongful for an agency to begin anew an adverse action based on charges which were previously brought when the initial action was invalidated on procedural grounds. Stevenson v. United States, 155 Ct.Cl. 592, 597 (1961), cert.

denied, 371 U.S. 835, 83 S.Ct. 58, 9 L. Ed.2d 70 (1962).

### B. The appointment of the hearing committee

■ Plaintiff claims that, because of the attendant publicity surrounding his case, he was precluded from receiving a fair and impartial hearing before a hearing committee, which was appointed by the director of the same division which had filed the adverse action against plaintiff. In essence, this amounts to an argument concerning venue. Plaintiff, however, does not deny defendant's contention that the hearing committee was properly appointed under the applicable Navy regulations, Navy Civilian Personnel Instructions § 750.5–6 (October 26, 1962). The record also shows that the chairman and other members of the committee affirmed at the outset that they had in no way been concerned with plaintiff's case previously and had no knowledge of any prior disciplinary action attempted by the agency against plaintiff. Based on these undisputed facts and the record, the court cannot sustain plaintiff's unsupported allegation that his procedural rights were violated due to improper venue.

### C. The names and addresses of Government witnesses

■ Plaintiff, in his petition, argues that he was not furnished the names and addresses of all Government witnesses who supplied the charging authorities with letters and memoranda used against plaintiff. Plaintiff was in fact informed on November 3, 1965, by the designated chairman of the Hearing and Advisory Committee of the time and place of the scheduled hearing. On November 4, 1965, the management representative forwarded to plaintiff a full list of the witnesses to appear on behalf of management at the hearing. Plaintiff's counsel acknowledged, in the record, that he was so informed. What plaintiff contended at the hearing, and now contends before the court, is that he

was wrongfully denied the names and addresses of *any and all* persons in the Bureau of Yards and Docks who *ever* signed letters, affidavits, memos, et cetera concerning the work of plaintiff. The court finds that, in the instant case, such a list would no doubt be practically impossible to furnish and that there exists no requirement to satisfy such a far-reaching request, especially in this case, where the advance notice of the charges was, as we have found, extremely specific and detailed. Additionally, the record shows that management would have, and did, supply plaintiff with any specific or particular documents requested.

### D. The right of cross-examination

■ Plaintiff alleges that at the hearing his counsel was severely curtailed and restricted in his attempt to cross-examine Government witnesses, thereby denying plaintiff his right to a full cross-examination. *See* Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). After examination of the record, however, the court finds that, in the instant case, plaintiff was not denied a full cross-examination, but, rather, plaintiff's counsel was limited in his scope of cross-examination under applicable rules of evidence. Plaintiff has failed to show any specific examples which the court believes constitute unlawful administrative action depriving him of his right of cross-examination.

### E. The production of witnesses

■ Plaintiff alleges that he did not have made available to him certain witnesses who were Government employees. For example, plaintiff contends that he requested such witnesses, as Messrs. Stahl and Walter, be made available. The court finds, however, that at the hearing plaintiff's counsel indicated that he would secure the presence of these witnesses before the hearing committee. This was not a request of the agency to produce these persons. It is clear that, in cases such as this, an employee must make an effort to secure the presence of the desired witnesses. In Williams v. Zuckert, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486, on petition for rehearing, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), the Supreme Court established a 3-point test which a party must satisfy before he may claim that a procedural right was violated because of the lack of an opportunity to cross-examine witnesses. The party must either (1) discharge his initial burden under applicable regulations by making a timely and sufficient attempt to obtain the presence of witnesses, or (2) under the circumstances, and without fault of his own, be justified in failing to make such an attempt, and if so (3) make a proper and timely demand upon the agency to produce those witnesses under its control. 372 U.S. at 765, 83 S.Ct. 1102. Plaintiff has failed to demonstrate to the court that he has "discharged his initial burden." *See* Begendorf v. United States, 340 F.2d 362, 169 Ct.Cl. 293 (1965). Likewise, he has failed to show that under the circumstances he was justified in not assuming this burden. *See* Hanifan v. United States, 354 F.2d 358, 173 Ct.Cl. 1053 (1965). *See also* Cohen v. United States, 369 F.2d 976, 984–985, 177 Ct.Cl. 599, 613–614 (1966).

In conclusion, the court finds that the record fails to disclose either procedural error or arbitrary administrative action in the hearing held before the Hearing and Advisory Committee. Therefore, with respect to the issue concerning procedural defects in the hearing process (A through E of this part of the opinion), defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied.

### III

### THE FINDINGS OF THE NOTICE OF DECISION BY THE SECRETARY OF THE NAVY

■ Plaintiff alleges that the final decision of the Secretary of the Navy, dated December 30, 1966, made no findings of fact as required by the Federal

Personnel Manual Supplement 752–1 (January 19, 1965). Recalling the facts of the instant case, it is pertinent to remember that the decision of the Secretary was directed to plaintiff's appeal from the final decision rendered by the commanding officer of the Chesapeake Division of the Facilities Engineering Command. The decision of the commanding officer was nine typewritten pages in length and consisted of specific findings on each and every charge. Rather than reiterate the detailed decision of the commanding officer, the Secretary, in affirming the decision, simply noted that the decision was warranted, based on the reasons and findings set forth therein and denied plaintiff's appeal. Thus, the Secretary's decision implicitly incorporates the decision of the commanding officer. Plaintiff does not deny that the commanding officer's decision contained the necessary and required findings of fact. This being so, the court finds plaintiff's contention to be nothing more than a technical objection without merit. Therefore, with respect to this issue, defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied.

## IV

### THE QUESTION OF SUBSTANTIAL EVIDENCE AND THE ALLEGED BIAS AND PREJUDICE OF COMMANDER COLE

Defendant, in its motion for summary judgment, contends that the charges contained in the notice of July 23, 1964, are supported by substantial evidence, and, therefore, the administrative decision ordering plaintiff's demotion should not be overturned. Plaintiff, in his cross-motion for summary judgment, contends the opposite, i. e., that the charges are not supported by substantial evidence, and, therefore, the administrative decision should be overturned. As mentioned previously, plaintiff has also moved, in the alternative, that in the event the court denies his motion for summary judgment, the court should also deny defendant's motion and remand the case to the trial commissioner on the ground that material issues of fact are in dispute regarding the alleged arbitrary and capricious action on the part of Commander Cole. The essence of plaintiff's allegation is that Commander Cole, due to bias and prejudice, harassed plaintiff as part of an overall plan (in which he essentially succeeded) to effectuate plaintiff's removal.

■ After a review of the record and oral argument, the court concludes that there *is* a genuine issue of material fact: whether Commander Cole was or was not biased and prejudiced vis-à-vis plaintiff and acted accordingly. Defendant has attempted to persuade the court that Commander Cole's motives or any related factual issue is wholly immaterial, but the court finds this contention untenable. Commander Cole was plaintiff's supervisor and it is fair to say that his role in the matters with which this case is concerned cannot be underestimated. Commander Cole's actions are clearly inextricably related to the question of whether or not there is substantial evidence to support the administrative decision. Plaintiff's allegations concerning Commander Cole's actions present issues of fact, the resolutions of which would be improper on motions for summary judgment.

Therefore, with respect to the substantial evidence issue, the parties' motions for summary judgment are both denied, and the case is remanded to the trial commissioner for his consideration of the factual issue raised concerning Commander Cole, with the express view toward aiding the court in ascertaining the effect of Commander Cole's alleged biased and prejudiced actions on the substantial evidence issue.

## V

### THE CIVIL SERVICE COMMISSION'S DENIAL TO ENTERTAIN PLAINTIFF'S APPEAL

The record clearly shows, and plaintiff admits, that throughout the appeal

of his case through the Navy Department, he was expressly advised by the Navy that he had the right to appeal, either through the Navy *or* through the Civil Service Commission—but not through both. Plaintiff was well aware of the regulations which provided for mutually exclusive avenues of appeal. *See* 5 C.F.R. § 752.205 (1971). Notwithstanding, it is plaintiff's contention that, as a matter of law, he was, and is, entitled to an appeal to the Civil Service Commission—despite the regulations to the contrary. Therefore, plaintiff argues, the Commission erroneously refused to entertain his appeal.

The Veterans' Preference Act guarantees the veteran the right to appeal to the Civil Service Commission from an adverse decision of any administrative officer. 5 U.S.C. § 7701 (1970). Executive Order No. 10988, issued January 17, 1962, extended this right of appeal to all employees "in the competitive service," whether veterans or not. This court previously has indicated that an appellate procedure which provides for mutually exclusive routes of appeal does not violate an employee's right of appeal to the Civil Service Commission, as guaranteed by the Veterans' Preference Act. In Doyle v. United States, 158 Ct.Cl. 573 (1962), cert. denied, 374 U.S. 839, 83 S.Ct. 1892, 10 L. Ed.2d 1060 (1963), plaintiff, a veteran, brought suit for the recovery of back salary based on an alleged invalid removal from his position as a civilian attorney with the Army Signal Supply Agency. Plaintiff in *Doyle* was informed by the agency that, under applicable regulations, he could utilize the grievance procedure of the Department of the Army *or* that he could elect to appeal to the Civil Service Commission, but that if he followed the latter route he could not have his case reviewed under the Army departmental procedure. Plaintiff chose to pursue the Army's remedy and he received a hearing pursuant thereto. Before the departmental proceeding was completed, however, plaintiff sought to appeal to the Civil Service Commission, requesting the Commission to hold his appeal in abeyance until the completion of the hearing before the Army. When the Commission refused to delay the appeal, as plaintiff had requested, plaintiff withdrew his appeal, apparently to save his pending appeal before the Army. Subsequently, the Commission refused to reopen or reinstate plaintiff's appeal thereto. In his suit before this court plaintiff contended, *inter alia*, that he was denied his statutory right to appeal to the Civil Service Commission. In answer to this argument, the court stated:

> * * * Finally, plaintiff chose to abandon his appeal to the Civil Service Commission; *he was not deprived of any right by being put in the position of having to elect between that appeal and the Army's grievance procedure.* * * *

[Emphasis supplied.] 158 Ct.Cl. at 575. *See also* Morelli v. United States, 161 Ct.Cl. 44 (1963). Similarly, in the instant case, the court does *not* find that plaintiff's right to appeal to the Civil Service Commission, as guaranteed by the Veterans' Preference Act, was in any way abridged or violated. Plaintiff chose *not* to exercise his right of appeal to the Commission by knowingly and voluntarily electing to pursue a mutually exclusive avenue of appeal. Thus, with respect to this issue, defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied.

## VI

## CONCLUSION

Accordingly, for the reasons given above, plaintiff's cross-motion for summary judgment is denied in its entirety. Defendant's motion for summary judgment is granted, and the petition is dismissed, under parts I, II, III, and V of this opinion. Defendant's motion is denied under part IV, and the case is remanded to the trial commissioner for his consideration and report on the issue of Commander Cole's alleged biased and prejudiced actions.

NICHOLS, Judge (concurring in part, dissenting in part).

I agree with and join in the mostly clear and lucid opinion and judgment of the court, except that I respectfully am perplexed by Part IV and the conclusion therefrom, which is to remand for trial the issue whether Commander Cole's actions against the plaintiff resulted from his bias and prejudice.

At the threshold, let me say I have formed the conclusion after five years on this court, that these limited remands almost never work as intended, and confront our able trial commissioners with impossible tasks. The limited remand is, in my judgment, likely to assure a prolonged and wide-ranging trial. I surmise the limits here are imposed in view of the court's doubts as to the propriety of remanding anything, and its consequent hope the baby will, if illegitimate, at least be small. It will come out the standard size, or bigger, I am confident. I think no trial or report is necessary, but if there must be one, I would rather have it on the whole case.

This litigation is one more instance where the accused employee has successfully turned the focus of inquiry away from his own alleged derelictions and directed them at those of someone else. The wise supervisor in the executive branch learns to put up with almost any degree of incompetence rather than attempt adverse action, and thereby endanger his own reputation and future. If he does anything, it is to engineer the transfer of the offender to some other unit, of course loaded with paper commendations. Only the naive fall into the trap in which Commander Cole now finds himself.

I have no doubt the Commander did have bias against the plaintiff. Government counsel, at least *arguendo,* could have admitted it. Supervisors generally do develop hostile feelings against subordinates they have had no voice in selecting, yet who they think are diluting their effectiveness and increasing their burdens. Tenure would be worthless if

some counter to this were not provided. It was provided here in the form of a Hearing Committee, drawn from outside plaintiff's immediate work situation. The court has no criticism of its composition and there is no suggestion any member was biased. Cole was technically not even a complaining witness before this group. He had retired and, presumably, departed from the scene. After the Committee had reported, three command levels had to approve the recommended demotion, of whom the top one, the Secretary, at least, was hardly likely to have ever heard of either Cole or Reynolds, still less have any bias for either one against the other. Unless the Secretary was a most unusual official, he would have had a bias against actions of the kind here involved.

Suppose Cole's role be assimilated to that of a complaining witness. What the court is holding, *sub silentio,* is that an adverse action is invalid if a complaining witness is biased. We hear a lot about courts favoring the criminals, these days, but I never heard of the most anti-police tribunal ordering a new trial because a prosecution witness was biased. If defense counsel was prevented from cross-examining to show bias, that would of course be another matter. Here, the court has considered the scope of cross-examination that was allowed and has no criticism to offer. Thus, if our trial commissioner reports that Cole was indeed biased, I shall (a) not be astonished, and (b) ask what of it? If the hearing tribunals and adjudicating officials here involved were incapable of discounting a complainant's bias and deciding fairly despite it, our whole machinery to secure fairness in adverse action cases is useless. We might as well junk it and substitute something else, trial by battle, possibly.

In the event that Commander Cole denies he was biased, the only way of testing it will be the reasonableness of his complaints against Reynolds. Thus the trial commissioner will have a Hobson's choice: either disregard the wish of the court to limit the issues, and reopen the

whole case, or exclude the very thing that would most probably show him whether Cole was biased or not. If the issue were framed to be whether Cole committed a fraud on his superiors, who adjudicated the case, or on the Hearing Committee, this would give us a justiciable issue more in accord with accepted legal concepts, and one more readily limited. If an issue of fraud were before us in this record, I would not object to the remand. But none is. The plaintiff's able counsel tried to link up Cole's alleged bias with the decision under review, by a kind of "old-school-tie" theory. The notion is, if A is biased, against any person, the *mores* of the Navy require that anyone wearing the same school tie, B, C and D, must automatically be biased too, by some sort of subrational intuition, perhaps. This has some surface plausibility, but it appears to me a court of law would require evidence that it was so, and could not just assume it. Our trial commissioner is told to investigate whether A was biased, but is given no mandate to trace the passage of the bias to the minds of B, C and D, the tie-wearing adjudicating officers. How this gap is to be bridged is not explained; counsel certainly did not explain it.

Skelton, J., filed concurring opinion in which Collins, J., joined.